## Robert W. Healy et al.

### v.

## The Joliet & Chicago Railroad Company et al.

1. Navigable Streams.—Those rivers must be regarded as public, navigable rivers in law, which are navigable in fact, and they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade or travel are or may be conducted in the customary modes of trade and travel on water.

2. User not necessary.—Where a water-course in its natural condition is susceptible of being advantageously used for purposes of transportation by water, it is in law a navigable stream, and this conclusion is not affected by the fact that the stream has never been actually used for that purpose to any great extent. The public easement depends not so much upon actual user as upon the capabilities of the stream for advantageous use as a public highway.

3. Nuisance—Where the charter of a railroad company gives it the right to construct its road across a water-course only on condition that the same should be restored to its former state, or in such manner as not to impair its usefulness, a bridge erected over such water-course which does not fulfill this condition of the charter, is both a public and private nuisance, as much so as if it had been erected without legislative authority.

Error to the Circuit Court of Cook county; the Hon. E. S. Williams, Judge, presiding.

Messrs. Sweezy & Ives, for plaintiffs in error; that a court of equity has jurisdiction in this case, cited Wood's Law of Nuisance, § 647; 2 Story's Eq. Jur. § 921; 2 Waterman's Eden on Injunctions, 264; City v. Alexandria Canal Co. 12 Pet. 91; State v. Wheeling Bridge Co. 13 How. 518; Frink v. Lawrence, 20 Conn. 117; Knox v. Mayor, 55 Barb. 404; Mayor v. Baumbeger, 7 Robt. (N. Y.) 219; Hudson River R. R. Co. v. Loeb, 7 Robt. (N. Y.) 418; Davis v. Mayor, 14 N. Y. 506; Park v. C. & S. W. R. R. Co. 23 Iowa, 636; Ewell v. Greenwood, 26 Iowa, 377; Wahle v. Reinback, 76 Ill. 322; State v. Mayor, 5 Porter, 279; Mayor v. Jaques, 30 Ga. 506; Savannah R. R. Co v. Sheils, 33 Ga. 601; Barnes v. City, 4 Wis. 454.

As to what constitutes navigable waters and the rights of per-

sons owning lands bordering thereon: The Montello, 20 Wall. 430; The Daniel Ball, 10 Wall. 557; Pennsylvania v. Wheeling Bridge Co. 13 How. 518; Berry v. Carle, 3 Me. 269; Brown v. Chadburne, 31 Me. 9; Veazir v. Dwinel, 50 Me. 479; Gerrish v. Brown, 51 Me. 256; Lancey v. Clifford, 54 Me. 487; Scott v. Wilson, 3 N. H. 321; Thompson v. Androscoggin Co. 54 N. H. 545; Commonwealth v. Charlestown, 1 Pick. 179; Charlestown v. Middlesex, 3 Met. 202; Morgan v. King, 35 N. Y. 454; People v. Vanderbilt, 26 N. Y. 287; Blanchard v. Western Union, 60 N. Y. 570; Brown v. Scofield, 8 Barb. 239; Moore v. Sanborn, 2 Mich. 519; Thunder Bay Co. v. Speechly, 31 Mich. 336; Barnes v. Racine, 4 Wis. 454; Oleson v. Merrill, 42 Wis. 203; Delaplain v. C. & N. W. R. R. Co. 42 Wis. 214; Packet Co. v. Peoria Bridge Co. 38 Ill. 467; City v. McGinn, 51 Ill. 266; Am. River W. P. Co. v. Amsden, 6 Cal. 443; Weise v. Smith, 3 Ore. 445; Felger v. Pearsons, 3 Ore. 455; Stuart v. Clark, 2 Swan, 9; Hickox v. Hine, 23 Ohio, 523; Angell on Watercourses, § 535.

The bridge is maintained in violation of the provisions of the charter of defendants, and should be abated as a nuisance: C. R. I. & P. R. R. Co. v. Moffit, 75 Ill. 524; Cott v. Lewiston R. R. Co. 36 N. Y. 214; Plummer v. Lumbering Asso'n, 67 Me. 363; Dugan v. Bridge Co. 3 Casey, 303; Bacon v. Arthur, 4 Watts, 437; Brown v. Cayuga, etc. R. R. Co. 12 N. Y. 486.

Mr. GEORGE W. SMITH, for defendants in error; that navigability in law is derived from navigability in fact, cited The Genesee Chief, 12 How. 443; The Daniel Ball, 10 Wall. 557; The Montello, 11 Wall. 411; The Montello, 20 Wall. 440; Ingraham v. C. B. & M. R. R. Co. 34 Iowa, 255.

The test of navigability is that it shall be beneficial to the public for purposes of trade or agriculture: Glover v. Powell, 10 N. J. Eq. 211; Rowe v. Granite Bridge Co. 21 Pick, 344; Gilbert v. Morris, etc. Canal Co. 8 N. J. Eq. 495; Luther v. Winnisimet Co. 9 Cush. 171; Hubbard v. Bell, 54 Ill. 110; Wadsworth v. Smith, 11 Me. 281; American Water Co. v. Amsden, 6 Cal. 443; Veasie v. Dwinel, 50 Me. 479.

When a stream is not meandered, the presumption is that it

is not navigable: Clute v. Briggs, 22 Wis. 607; Hubbard v. Bell, 54 Ill. 110.

No case is made for an injunction: Laney v. Jasper, 39 Ill. 46; Stetson v. C. & E. R. R. Co. 75 Ill. 74; P. & I. R. R. Co. v. Schurtz, 84 Ill. 135; Dunning v. City of Aurora, 40 Ill. 481; Bliss v. Kennedy, 44 Ill. 81; Wahle v. Reinbach, 76 Ill. 322.

BAILEY, J. In this case, the plaintiffs in error and two others, being the owners in fee of a portion of lot six, block one, in Canal Trustees' subdivision of Sec. 29, T. 39, N. R. 14, in the city of Chicago, fronting on a branch arm of the South Branch of the Chicago River, known as the Healy Slough, exhibited their bill in chancery in the Circuit Court of Cook county, against the Joliet and Chicago Railroad Company, and the Chicago and Alton Railroad Company, to compel the removal of a permanent bridge, ccnstructed and maintained by said railroad companies across said arm or branch of the river, and the erection and maintenance of a draw-bridge in lieu thereof. On the hearing of the cause in the court below, on bill, answers, replication and proofs, the bill was dismissed at the cost of the complainants for want of equity.

The record shows that the south branch of the Chicago River, at the mouth of the Healy Slough, runs in a direction nearly east and west, and that the Healy Slough, from its point of confluence with the river, extends in a southerly direction to a point a half of a mile or more south of the premises owned by the complainants. The track of the railroad, now used and occupied by the Chicago and Alton Railroad Company, runs nearly parallel with the river, and crosses Healy Slough by means of the bridge in question, at a point three hundred and eighty-three feet from the river. Two hundred and eighty-five feet south of the railroad track, Archer avenue, one of the public streets of Chicago, also running nearly parallel with the river, crosses Healy Slough by means of a permanent bridge. The premises owned by the complainants comprise the land lying between the railroad and Archer avenue, fronting on the easterly side of the slough.

The complainants are the heirs-at-law of one Robert Healy,

deceased, and derive their title to said premises from him by descent. Robert Healy acquired the right of pre-emption to said premises in 1837, and afterwards purchased the same from the Canal Trustees, who, by deed dated June 15, 1855, conveyed said premises to him in fee. Said Robert Healy continued to own the same until his death, which occurred in April, 1871, whereupon the title descended to and became vested in the complainants.

The Joliet and Chicago Railroad Company was created by an act of the General Assembly, approved February 15, 1855, and authorized to locate and construct a railroad from Chicago to Joliet. By said act it was provided that whenever it should be necessary for the construction of said railroad to intersect or cross any water-course, it should be lawful for the corporation to construct its railroad across or upon the same, provided the corporation should restore the water-course thus intersected to its former state, or in a sufficient manner not to have impaired its usefulness. Said company, shortly after its creation, proceeded to locate and construct the railroad in question, and completed the same within two or three years thereafter. As originally constructed, the railroad crossed Healy Slough by means of a draw-bridge, capable of being turned upon the approach of vessels, so as to admit of the passage of the same along said slough. This bridge was maintained and operated until some time in 1864, when it was removed and the present immovable bridge erected in its place.

The Chicago & Alton Railroad Company was incorporated under an act of the General Assembly, approved February 18, 1861, and on or about January 1, 1864, said company obtained from the Joliet & Chicago Railroad Company a perpetual lease of its said railroad, including the bridge in question, under which lease the said Chicago and Alton Railroad Company has since that time held possession of and operated said railroad.

The complainants, by their bill, insist that the Healy Slough is a navigable stream or water-course, and a common highway, to which the bridge in question is an unlawful obstruction. Relief is asked upon two distinct grounds. It is insisted, first, that the bridge being an unlawful obstruction

to a common highway, is a public nuisance, from which the complainants, as riparian proprietors, sustain special and peculiar damages; and, secondly, that the water-course thus crossed by the railroad, not being restored in such a manner as not to have impaired its usefulness, the bridge is erected and maintained in violation of the express mandate of the statute, from which the authority to construct and maintain it is derived. As the record discloses no material respect in which said water-course has not been restored to its former usefulness, except so far as relates to its capability of being utilized for purposes of navigation, both of the grounds for relief set up in the bill involve a consideration of one and the same question, namely, whether said water-course is, in point of fact, a navigable stream.

It may be remarked that none of the streams or water-courses within this State are navigable in the sense of the common law. No rivers, by the common law, are navigable above the ebb and flow of the tide; and as this State is situated many hundred miles above the highest point at which the tide ebbs and flows in the Mississippi and St. Lawrence, to which all our waters are tributary, it is manifest that the classification of waters into navigable and non-navigable by the common law rule, at least so far as relates to the public easement, can have no application here.    In the case of The Daniel Ball, 10 Wallace, 557, the Supreme Court of the United States says: "The doctrine of the common law as to the navigability of waters, has no application in this country.    Here the ebb and flow of the tide do not constitute the usual test, as in England, or any test at all, of the navigability of waters.    There no waters are navigable in fact, or at least to any considerable extent, which are not subject to the tide; and from this circumstance tide-water and navigable water there signify substantially the same thing. But in this country the case is widely different.    Some of our rivers are as navigable for many hundreds of miles above as they are below the limits of tide-water; and some of them are navigable for great distances by large vessels, which are not even affected by the tide at any point during their entire length. A different test must therefore be applied to determine the

navigability of our rivers, and that is to be found in their navigable capacity."

The rule applicable to the waters of this country is stated in the same case, as follows: "Those rivers must be regarded as public, navigable rivers in law, which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water."

In like manner the Court of Appeals of New York, in Morgan v. King, 35 N. Y. 454, lays down the rule as follows: "The true rule is, that the public have a right of way in every stream which is capable, in its natural state and its ordinary volume of water, of transporting in a condition fit for market the products of the forest or mines, or of the tillage of the soil upon its banks. If it is so far navigable or floatable in its natural state and its ordinary capacity, as to be of public use in the transportation of property, the public claim to such use ought to be liberally supported."

It is conceded that the Chicago River, including the South Branch of said river, to a point considerably above the mouth of the Healy Slough, is a navigable stream within the rules of law recognized in this country. Indeed, during the whole commercial history of Chicago, this river and its branches have been the channel through which the commerce of the Great Lakes has reached the wharves, docks and warehouses of the city. Whether the Healy Slough is navigable in such sense as to constitute it a common highway, must depend upon its capabilities in its natural state, and ordinary volume of water, of being utilized for the purposes of commerce or transportation. This presents a mere question of fact, to be determined by the evidence in the record.

The testimony in the case relating to this question is voluminous, and we do not deem it necessary to examine it in detail. A large number of witnesses are examined who have been acquainted with this water-course, and some of them are able to describe its condition at a period as early as the year 1834. It appears substantially without contradiction, that in its natural

state it partakes partly of the nature of a stream of water, draining a considerable extent of the adjacent country, and partly of the nature of a bayou or arm of the river, receiving its supply of water from the river itself. The witnesses describe it as having a well-defined course, outlines and banks, with a hard bottom, and filled with clear water, well stocked with fish, and having a nearly uniform depth of from four to six feet, and a width of from eighty to one hundred feet, all the way from its mouth to the vicinity of a certain stone quarry, situated a considerable distance above the complainant's premises. There is some conflict, it is true, as to the depth of the water—some of the witnesses placing it at less than is here stated, and others making it still deeper; yet the witnesses who seem to have been most familiar with the stream in its original condition, and whose observations and measurements were taken before the character of the channel had been disturbed or altered by the city improvements, and whose testimony is, in our opinion, most satisfactory, sustain the conclusion that originally its depth was at least as great as stated above.

One of the witnesses testifies, that from the latter part of July to some time in September of the year 1834, for a period of about six weeks, he was engaged in boating stone from the stone quarry, which is situated near the banks of the Healy Slough and from sixty to one hundred rods from its mouth, employing, in such transportation three boats, two of them scows—one sixty and one seventy feet in length, and carrying, one six and the other seven cords of stone. The other boat was an "ark," as the witness denominates it, being a boat seventy feet long and thirty feet wide, and carrying ten or twelve cords of stone. These loads of stone were transported by the witness down the Healy Slough, and thence down to the mouth of the Chicago River, and used in the construction of the piers then being erected at that place. During all this time the witness made one trip a day with his boats, from the mouth of the Chicago River to the stone quarry and back, and sometimes more. It does not appear that while these transactions were going on the stage of water in the river was higher than ordinary, and the

witness is of opinion that it was not. There is other testimony tending to show that at various times, from the year 1834 up to the time of the erection of the bridge complained of, this stream was actually used to some extent for purposes of navigation.

The facts thus proved, we think, fully warrant the conclusion that the water-course in question, in its natural state and ordinary condition, was susceptible of being advantageously used for purposes of transportation by water. This conclusion cannot be successfully met, by the fact that the stream has never been actually used for that purpose to any great extent. The public easement depends, not so much upon actual user, as upon the capabilities of the stream for advantageous use as a public highway. Very much weight also is due to the fact that the stream is immediately connected with that very important highway of commerce, the Chicago River. While its natural adaption to purposes of navigation is not thereby affected, the necessity of supporting the public claim to its use is greatly enhanced.

The record shows that since the building of the railroad, that portion of the stream in question lying between the railroad and Chicago River has been widened and deepened, so that it now serves as a slip, in which vessels from the lake are run for the purpose of being loaded and unloaded. That portion in front of complainant's premises has in like manner been excavated, and is now capable of serving the same useful purpose were the obstruction caused by the bridge removed, and the widening and deepening of the stream carried across the right of way belonging to the railroad company. The interests of the complainants injuriously affected by the obstruction, as will be seen, are of very considerable value, and their damages are of such special and peculiar nature that we think a case is made out for equitable interference on their behalf.

The charter of the defendants give them a right to construct their railroad across this water-course only on condition that the same should be restored to its former state, or in such manner as not to impair its usefulness. This condition not having been fulfilled, the bridge is both a public and private nuisance,

as much as though it had been erected without legislative license or authority. The charter is a sufficient warrant for the erection and maintenance of the bridge only when the bridge is erected in accordance with its terms and conditions.

The decree of the court below will be reversed, and said court directed to enter a decree requiring said defendants within ninety days after the entry of such decree, to remove said bridge, and restraining them from erecting in place thereof any other bridge which shall not be so constructed as to admit of the free passage of boats and vessels along the water-course in question across the right of way of said defendants, such decree to be otherwise not in conflict with this opinion.

Decree reversed.